**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KIRKWOOD FLORIST, INC., <br><br> Plaintiff/Relator, <br><br> v. <br><br> HI-FLOAT, INC., *d/b/a Hi-Float Company Inc.*, <br><br> Defendant. | Case No.:_t/b/d <br><br><br> *JURY TRIAL DEMANDED* |

Plaintiff/Relator, Kirkwood Florist, Inc. ("Plaintiff/Relator"), through counsel, for its Complaint against Defendant Hi-Float, Inc. ("Hi-Float") alleges:

## INTRODUCTION

1. Plaintiff/Relator brings this action for injunctive relief under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 16 of the Clayton Act, 15 U.S.C. § 26, and for false patent marking under 35 U.S.C. § 292.

2. Hi-Float, a company created by reason of the Hi-Float® inventor's original (and now-expired) patented technology, has attempted and obtained an unlawful monopoly in the nationwide market for aqueous solutions that extend gas-inflatable balloon float time (the "market").

3. Hi-Float's determined conduct of marking its Super Hi-Float® and Ultra Hi-Float® products with expired U.S. Patent 4,634,395 ("the '395 patent") purports to threaten and prohibit competitors from entering the market with viable float-extending products containing glycerine plasticizers, which products would not be covered by Hi-Float's subsequent patent— US patent 5,244,429 ("the '429 patent").

1

4.	Hi-Float's conduct is deceptive and anticompetitive for at least two distinct reasons: *first*, the '395 patent is expired so the marked articles are not covered by that patent, and *second*, the Super Hi-Float® and Ultra Hi-Float® products do not, upon information and belief, contain a glycerine plasticizer, the absence of which was the precise characteristic relied on to obtain the '429 patent. Accordingly, Hi-Float by falsely marking products, has attempted to extend its monopoly beyond the scope of any valid patent, which because of Hi-Float's dominance, results in supra-competitive prices in the market.

5.	In short, Hi-Float is attempting to give the appearance of a total product monopoly although uncovered products (solutions without a glycerine plasticizer) are completely viable and open to competitors.

6.	The patent marking statute, 35 U.S.C. § 287(a), and the false patent marking statute, 35 U.S.C. § 292, exist to ensure that the public has accurate information on the existence of patent rights.

7.	As set forth herein, Hi-Float has violated 35 U.S.C § 292(a) by falsely marking and advertising products as protected by patent for the purpose of deceiving purchasers, potential competitors, and the public into believing that they are protected by patent, when they are not.

8.	In addition and independently, Hi-Float's false marking conduct is anticompetitive and violates antitrust laws of the United States: it dissuades and deters competitors from entering the market with a product covered by Hi-Float's expired patent claim.

9.	Hi-Float's conduct has caused antitrust injury by means of supra-competitive prices charged for its products by reason of the lack of market competition.

10. Hi-Float's false marking and anticompetitive conduct described in detail below injures the public interest because it stifles competition, and deters innovation and scientific research.

## JURISDICTION, VENUE, AND PARTIES

11. Plaintiff/Relator is a Missouri corporation. Plaintiff/Relator sues on its own behalf and on behalf of the United States.

12. Because Hi-Float has no viable competition, Plaintiff/Relator, which uses balloon float-extending solutions as part of its ongoing business activities, is threatened with antitrust injury as a result of the breakdown in competitive conditions caused by Hi-Float's anticompetitive conduct and the attendant supra-competitive prices in the market.

13. Defendant Hi-Float is a Kentucky corporation with its principal place of business in Louisville, Kentucky. Although Hi-Float transacts substantial business in Missouri, Hi-Float is not authorized to do business in Missouri. Hi-Float may be served with process at its principal office and the office of its registered agent, Donald Burchett: 13025 Middletown Industrial Boulevard, Louisville, Kentucky 40223.

14. This Court has personal jurisdiction over Hi-Float because, upon information and belief, Hi-Float has marketed, advertised and/or sold, and continues to market, advertise and/or sell falsely marked products (as described in greater detail below) in Missouri and in this District and/or in the stream of commerce with knowledge that they would be sold and used in Missouri and in this District.

15. Further, upon information and belief, Hi-Float transacts substantial business in Missouri, and upon information and belief, has attended, participated, and used its falsely

marked products at business events in the Eastern District of Missouri (*e.g.*, the 2009 International Balloon Association conference in St. Louis, Missouri).

16. Further, Hi-Float operates, owns, and/or maintains a website where Missouri purchasers are directed as to how to obtain Hi-Float's falsely marked products.

*See* http://www.hi-float.com/missouri.html.

*See* http://www.hi-float.com/retailmissouri.html.

*See* http://www.hi-float.com/onlineus.html.

17. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

18. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of Missouri, and Defendant transacts business in this District.

## HI-FLOAT'S FALSE MARKING & ANTICOMPETITIVE CONDUCT

19. According to its website, Hi-Float is a company based on the creation of, and subsequent improvements to, the Hi-Float® solution:

> Don went to work on the problem at night in his basement shop, and after about a year developed HI-FLOAT. The rest is history; HI-FLOAT has become a phenomenal success.
>
> In 1992 we introduced an improved formula, SUPER HI-FLOAT, which worked twice as well. In 2002 the next generation of balloon treatment was born - ULTRA HI-FLOAT. This concentrated formula works twice as well as SUPER, and can increase the floating life of a latex balloon up to twenty-five times on average.

*See* http://www.hi-float.com/company.html.

20. Hi-Float has dominating power in the market.

21. The '395 patent was filed on March 22, 1984, and issued on January 6, 1987. A true and correct copy of this patent is attached as *Exhibit 1*.

22. The '395 patent expired no later than March 2004.

23. Between 2004 and the present date, Hi-Float knew that the patent expired, yet actively marked its website, and upon information and belief, products, with the expired patent number.

24. Hi-Float knew that the '395 patent was expired when it marked its articles with the expired patent.

25. Hi-Float is also assignee of the '429 patent". The '429 patent application disclosed the '395 patent but distinguished the new invention as an improvement based on the absence of a glycerine plasticizer:

> It has now been found that the buoyant lifetime of toy elastomeric balloons inflated with lighter than air gas such as helium can be greatly increased over those of Burchett by removing the glycerine plasticizer from the polyvinyl alcohol coating solution and replacing it with a water soluble carbohydrate, which we define here to mean any monosaccharide, disaccharide, water-soluble polysaccharide, or mixture of these. A preferred sacc-

A copy of the '429 patent is attached hereto as *Exhibit 2*.

26. Common sense dictates that Hi-Float cannot mark the products with both a glycerine plasticizer solution and a non-glycerine plasticizer solution.

27. The market for a glycerine plasticizer solution is thus open to competitors despite Hi-Float's representations.

28. HI-Float then marked articles with both patents.

29. Hi-Float—a company derived and developed through the use of intellectual property—has experience in the procurement and acquisition of patents in the United States.

30. Because of the nature of its business, Hi-Float actively maintains and seeks patents, and upon information and belief, has retained sophisticated intellectual property counsel.

5

31. By marking and continuing to mark articles with expired patent numbers, Hi-Float specifically intended to unreasonably restrain trade by misrepresenting false barriers to market entry.

32. By marking and continuing to mark articles with expired and inapplicable patent numbers, Hi-Float has injured the interests of the United States, its customers, and competitors, discouraged competition, innovation and scientific research.

33. By marking and continuing to mark articles with expired patent numbers, Hi-Float made communications to competitors, distributors, and end-users that they may not sell or purchase rubber acoustic underlayment products from anyone but Hi-Float due to the falsely marked patents.

34. Hi-Float had no legitimate purpose in marking the '395 patent on its products, and Hi-Float, upon information and belief, knows that patents have finite duration and its conduct was in bad faith.

35. Given the lack of competition, Hi-Float's anticompetitive acts negatively affects price in the market.

36. Hi-Float could have no reasonable belief that the '395 patent covered the products which it marked.

37. Hi-Float could have no reasonable belief that the '395 patent was not expired when in it marked its products.

## COUNT I
## FALSE PATENT MARKING OF PRODUCTS AND MATERIALS WITH THE '395 PATENT

38. Plaintiff/Relator incorporates by reference the allegations of paragraphs 1-37.

39. Hi-Float advertises, makes, sells, or has advertised, made, and sold, a number of products which it marks or causes to be marked with the '395 patent.

40. Hi-Float engaged in the conduct described above even though the '395 patent has expired.

41. Hi-Float engaged in the conduct described above even though the '395 patent has cannot apply to the products that do not contain a glycerine plasticizer.

42. In the alternative to Paragraph 37, to the extent Hi-Float marked the '429 patent on products that did contain a glycerine plasticizer, those products, by definition, would not be covered by the '429 patent.

43. Upon information and belief, Hi-Float was and is aware that the '395 patent was expired when it engaged in such conduct.

44. Hi-Float, therefore, intentionally used in advertisings marked products with the the '395 patent in order to deceive its competitors and the consuming public into believing that Hi-Float would enforce the patents described in its advertisements and products against any potential infringers.

45. Hi-Float knew that the articles it marked and continues to mark were and are not covered by the expired patent marked on its products.

## COUNT II
## MONOPOLIZATION

46. Plaintiff/Relator incorporates by reference the allegations of paragraphs 1-37.

47. Hi-Float possesses monopoly power in the market. Through the anticompetitive conduct described herein, Hi-Float has willfully maintained, and unless restrained by the Court will continue to willfully maintain, that power by anticompetitive conduct. Hi-Float has acted

with an intent illegally to maintain its monopoly power in the market, and its illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

48. Plaintiff/Relator is threatened with antitrust injury in the form of supra-competitive prices paid for Hi-Float's products as a direct and proximate result of Hi-Float's antitrust violations.

## COUNT III
## ATTEMPTED MONOPOLIZATION

49. Plaintiff/Relator incorporates by reference the allegations of paragraphs 1-37.

50. Hi-Float, through its false marking and anticompetitive conduct is attempting to misuse and extend the '395 monopoly post-patent, and to restrain trade.

51. Hi-Float has willfully engaged, and is engaging, in a course of conduct, including false marking conduct, in order to obtain a monopoly in the market, and there is a dangerous probability that, unless restrained, it will succeed, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Hi-Float has acted with a specific intent to monopolize, and to destroy effective competition in, the market.

52. Plaintiff/Relator is threatened with antitrust injury in the form of supra-competitive prices paid for Hi-Float's products as a direct and proximate result of Hi-Float's antitrust violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff/Relator respectfully requests that the Court enter judgment in its favor and against Hi-Float as follows:

A. Enter a declaration that Hi-Float has violated 35 U.S.C. §292 and15 U.S.C. § 2;

B. Enter an injunction prohibiting Hi-Float, and its agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of

them, from further violation 35 U.S.C. §292 or 15 U.S.C. § 2, marking products with the '395 patent, or engaging in further anticompetitive conduct;

C. Order Hi-Float to pay a civil monetary fine of $500.00 per false marking offense, or an alternative amounts as determined by the Court, one-half of which shall be paid to the United States;

D. Order Hi-Float to provide an accounting for any falsely marked products;

E. Order Hi-Float to pay all costs, attorneys' fees pursuant to 15 U.S.C. § 26, and applicable interests;

F. Grant Plaintiff/Relator such further relief as deemed appropriate.

Dated: March 9, 2011                                          Respectfully submitted,

/s/ *Andrew W. Kuhlmann*
Andrew W. Kuhlmann #6294407IL
**KUHLMANN LLC**
1926 Chouteau Avenue
Saint Louis, Missouri 63103
Telephone: (314) 621-3267
Facsimile: (314) 627-5970
*andrew@kuhlmannfirm.com*