UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIRKWOOD FLORIST, INC., ) | |
| ) | |
| Plaintiff/Relator, ) | |
| ) | |
| vs. ) | Case No. 4:11CV00421 JCH |
| ) | |
| HI-FLOAT, INC. d/b/a HI-FLOAT ) | |
| COMPANY, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Hi-Float, Inc.'s Motion to Dismiss Pursuant to Rule 9(b) and Rule (b)(6) (ECF No. 6). This matter is fully briefed and ready for disposition.

**BACKGROUND**

Relator Kirkwood Florist, Inc. ("Relator" or "Kirkwood Florist") claims that Defendant Hi-Float, Inc. ("Defendant" or "Hi-Float") has attempted to obtain an unlawful monopoly for aqueous solutions that extend gas-inflatable balloon float time. (Amended Complaint ("Compl."), ECF No. 4, ¶2). Relator claims that Hi-Float marked its Super Hi-Float® and Ultra Hi-Float® products with expired U.S. Patent 4,634,395 ("the '395 patent") in order to prohibit competitors from entering the market with "viable float-extending products containing glycerine plasticizers, which products would not be covered by Hi-Float's subsequent patent--U.S. patent 5,244,429 ('the '429 patent')". (Compl., ¶3). Relator claims that Hi-Float violated the False Marking statute, 35 U.S.C. §292(a), "by falsely marking and advertising products as protected by patent for the purpose of deceiving

purchasers, potential competitors, and the public into believing they are protected by patent, when they are not." (Compl., ¶7).[1]

Defendant filed a motion to dismiss attacking the constitutionality of 35 U.S.C. §292(a) under Federal Rule Civil Procedure 12(b)(6) and attacking the sufficiency of the pleadings under Rule 9(b). Defendant argues that the *qui tam* provision of the False Marking statute, 35 U.S.C. §292(b) is unconstitutional under the Appointments and Take Care Clauses of Article II of the United States Constitution because it improperly delegates enforcement authority to private citizens. Defendant also claims that the Relator failed to plead its false marking claim with sufficient particularity, as required by Fed.R.Civ.P. 9(b). Finally, Defendant asserts that Relator's Sherman Act claims fail because they are based on the false marking claims, are barred by the statute of limitations and because Relator has not stated a cause of action under Section 2 of the Sherman Act.

## DISCUSSION

**I.     Constitutionality of *Qui Tam* Provision of the False Marking Statute**

The False Marking statute contains a *qui tam* provision that provides, "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. §292(b). In other words, "even though a relator may suffer no injury himself, a *qui tam* provision operates as a statutory assignment of the United States' rights[.]" Stauffer v. Brooks Bros., 619 F.3d 1321, 1325 (Fed. Cir. 2010); Buehlhorn v. Universal Valve Co.,

---

[1] But see Pequignot v. Solo Cup Co., 608 F.3d 1356, 1362 (Fed. Cir. 2010), aff'd in part and vacated in part by 608 F.3d 1356 (Fed. Cir. 2010)("expired patents have less potential for harm than unexpired patents because any person with basic knowledge of the patent system can look up the patent and determine its expiration date, reducing the potential for being deceived.")(internal citation omitted).

Inc., No. 10-559, 2011 U.S. Dist. LEXIS 34429, at *4 (Mar. 31, 2011 S.D. Ill.). Relator must allege a violation of the statute, which suffices as an injury in fact to the United States. Id.

Defendant argues that the *qui tam* provision of the False Marking statute, 35 U.S.C. §292, violates the Appointments and Take Care clauses of Article II of the United States Constitution because it does not afford the executive branch with sufficient control over false marking cases. Specifically, the Appointments Clause gives the President the authority to select principal officers with the advice and consent of the Senate. U.S. Const., Art. II, § 2, cl. 2; Morrison v. Olson, 487 U.S. 654, 670, 108 S. Ct. 2597, 2608, 101 L. Ed. 2d 569 (1988). Likewise, the "Take Care" Clause makes it the President's duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3. In Morrison, the Supreme Court held that the Ethics in Government Act of 1978, establishing an independent counsel to investigate wrongdoing by certain Executive Branch officials, was constitutional because it provided the Executive with "sufficient control . . . to ensure that the President is able to perform his constitutionally assigned duties." Id. at 696.

Hi-Float primarily relies on Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc.,765 F. Supp. 2d 997 (N.D. Ohio 2011), which held that the *qui tam* provision of the False Marking statute was unconstitutional because "the government lacks sufficient control to enable the President to 'take Care that the Laws be faithfully executed.'" Id. at 1005.[2] The Unique Product court based its ruling on its determination that the Federal Circuit held that the False Marking statute is a criminal, not civil, statute, and thus the decision was controlled by Morrison v. Olson and its "sufficient control"

---

[2]Defendant cites to this decision even though the Northern District of Ohio issued a more recent decision, Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc., 2011 U.S. Dist. LEXIS 25328 (N.D. Ohio Mar. 14, 2011) in response to the United State's motion for reconsideration of the Court's February 23, 2011 order. The court granted the government's motion to intervene in that action and held that "even if the False Marking Statute is considered to be civil or a civil-criminal hybrid governed by the Federal Rules of Civil Procedure, the Court would still find the statute unconstitutional under the Morrison sufficient control analysis." Id. at *8.

analysis. Id. at 1003 (citing Pequignot, 608 F.3d at 1363).[3] The Unique Product court found that bringing suit "in the name of" the United States in a *qui tam* action was no different than bringing an action "as" the United States, "as both involve acting on behalf of the United States." Id. at 1004. The court also held that the government's right to intervene under Fed.R.Civ.P. 24 does not protect sufficiently the government's interests because "it does not require that the government actually be served with a False Marking complaint or any relevant pleadings." Id. at 1004-05.[4]

Rather, applying the Morrison "sufficient control" test, the Unique Products held that the *qui tam* provision of the False Marking statute "lacks any of the statutory controls necessary to pass Article II Take Care Clause muster." Id. at 1005. Instead, the statute "essentially represents a wholesale delegation of criminal law enforcement power to private entities with no control exercised by the Department of Justice." Id. In support of this finding, the court noted that under the *qui tam* provision, a private party can file a criminal lawsuit in the name of the United States without obtaining approval from or notifying the Department of Justice. Id. In addition, the Department of Justice provides no oversight, and the government has not right to limit the participation of the relator or to stay discovery. Id. Finally, the government cannot dismiss the *qui tam* action, but the relator can settle the action without any prior approval by the government. Id.

In response, Relator notes that almost every other court faced with this issue, other than the Unique Products court, has held that the *qui tam* provision of the False Marking statute is

---

[3]See Pequignot, 608 F.3d at 1363 ("The bar for proving deceptive intent here is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine.").

[4]The Unique Products court notes that "[w]hile 35 U.S.C. §290 requires each clerk of a district court to 'give notice thereof in writing to the Director [of the United States Patent and Trademark Office]' within one month after the filing of a patent action under Title 35, the only information required to be provided are the names and addresses of the parties, name of the inventor, and the designating number of the patent at issue." Id. at 1004. The court claims that this does not constitute sufficient notice, particularly because the case may have been settled by that time. Id. at 1004-05.

constitutional. (Relator's Opposition to Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 9(b) and Rule 12(b)(6) ("Response"), ECF No. 9, p. 2). According to a Northern District of Illinois case, if the Federal Circuit had perceived that the *qui tam* provision of the statute presented a subject matter jurisdiction problem, then it would have "been obligated to raise and address that issue sua sponte." Zojo Solutions, Inc. v. Stanley Works, 712 F. Supp. 2d 756, 758 (N.D. Ill. 2010) (citing Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295 (Fed. Cir. 2009)). Thus, according to the Zojo Solutions court, the Federal Circuit's "failure to speak of ... unconstitutionality could be viewed as confirming the validity of the statute." Id.

Relator asserts, and this Court agrees, that the Executive Branch is able to assert its interests in a *qui tam* action under the False Marking statute. (Response, p. 2). The Court finds that the *qui tam* action is a civil action, as the statute provides for a "civil fine." Moreover, the United States can intervene pursuant to 24(a)(2). (Response, p. 3 (citing Stauffer v. Brooks Bros., 619 F.3d 1321, 1328 (Fed. Cir. 2010) (district court made an error of law in denying the government's motion to intervene under Rule 24(a)(2)); see also Pequignot, 640 F. Supp. 2d at 727-28 (stating that the United States can move to intervene as a matter of right under Rule 24(a)(2), that it may move for a protective order under Rule 26(c) if the action interferes with government activities, and that its consent is required before dismissal under Rule 41(a)(1)(A)(ii) if it has intervened in the action). The Court finds that these procedural safeguards afford it sufficient control over *qui tam* actions under the False Marking statute.

Moreover, the Court notes that, contrary to Defendant's concerns, the United States is a participant to this litigation. Although Defendant has raised concerns regarding the separation-of-powers issues that might arise if the government decided to litigate a §292 action in a different manner than the *qui tam* relator, that situation does not present itself here. See Pequignot, 640 F.

Supp. 2d at 728 (citing U.S. v. Raines, 362 U.S. 17, 22, 80 S. Ct. 519, 4 L. Ed. 2d 524 (1960)("it is preferable that constitutional challenges be adjudicated as applied.") ; Tennessee v. Lane, 541 U.S. 509, 531, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004)).  Although the United States has not intervened as a full participant in the litigation, it has intervened to defend the constitutionality of §292(b) and Relator's ability to obtain damages from Defendant.  (ECF No. 26).  That is, the Executive Branch, which Defendant alleges has been "impermissibly encroach[ed]" upon by allowing this qui tam action (Defendant Hi-Float, Inc.'s Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Rule 9(b) and Rule 12(b)(6) ("Memorandum"), ECF No. 6-1, p. 3), has intervened and expressed no objection to Relator's prosecution of its claim under §292.  In fact, the Government supports Relator's action in all respects.  See ECF No. 27, p. 3 ("In the United States' view, there is nothing in the Constitution that prohibits Congress from using its legislative power to authorize private persons to sue for their own interests and to obtain a recovery that will be shared by a relator and the public Treasury.").  The Government's action in this case provides "persuasive evidence that separation-of-powers have not been violated here." Pequignot, 640 F. Supp. 2d at 728.

To date, the Federal Circuit has declined to address the constitutionality of §292.  Stauffer, 619 F.3d at 1327 ("we will not decide its constitutionality [of §292] without the issue having been raised or argued by the parties").  The Court, however, finds Pequignot court analysis persuasive and declines to hold that 35 U.S.C. § 292(b) is unconstitutional.  Based upon the foregoing, the Court believes that when the Federal Circuit chooses to address this issue, then it will find the *qui tam* provision constitutional given  the minimal intrusion of Executive Branch power and the lack of any need for further procedural safeguards. Pequignot, 640 F. Supp. 2d at 728.

**II.     Particularity**

   A.     Intent to Deceive

The Federal Circuit has held that Fed.R.Civ.P. 9(b) applies to false marking claims because they require an intent to deceive. See 35 U.S.C. §292(a) ("Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public ... [s]hall be fined not more than $500 for every such offense."); In re BP Lubricants USA Inc., 637 F.3d 1307, 1309-11 (Fed. Cir. 2011) (citing Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009)); see also Brown v. Georgia-Pacific Consumer Prods. L.P., No. 4:10-CV-1005, 2010 U.S. Dist. LEXIS 117673, at *5 (E.D. Mo. Nov. 5, 2010) ("Because intent to deceive is an element of false marking, I find a claim brought under 35 U.S.C. § 292 is a fraud-based claim, and is subject to the pleading requirement of Rule 9(b)."). The Federal Circuit has interpreted the False Marking statute to require "that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." Exergen Corp., 575 F.3d at 1327. A complaint alleging a cause of action under § 292 must provide "some objective indication to reasonably infer that the defendant was aware that the patent expired." In re BP Lubricants USA Inc., 637 F.3d at 1311. "[T]he combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public, rather than irrebuttably proving such intent." Pequignot, 608 F.3d at 1362-63. "[T]he Pequignot presumption informs the determination of whether a false marking plaintiff has met Rule 9(b). However, as we noted in Pequignot, '[t]he bar for proving deceptive intent [in false marking cases] is particularly high,' requiring that relator show 'a purpose of deceit, rather than simply knowledge that a statement is false.' ... That relator pled the facts necessary to activate the Pequignot presumption is simply a factor

- 7 -

in determining whether Rule 9(b) is satisfied; it does not, standing alone, satisfy Rule 9(b)'s particularity requirement." In re BP Lubricants USA Inc., 637 F.3d at 1312-13.

Defendant claims that Relator relies on purely conclusory allegations regarding Defendant's knowledge and intent. (Memorandum, p. 10). Relator alleges that "[b]etween 2004 and the present date, Hi-Float knew that the patent expired, yet actively marked its website, and upon information and belief, products, with the expired patent number" and that Defendant "knew the '395 patent was expired when it marked its articles with the expired patent." (Compl., ¶¶23-24). Relator also alleges that Defendant is "a company derived and developed through the use of intellectual property" and "has experience in the procurement and acquisition of patents in the United States." (Id., ¶29). Upon information and belief, Relator claims that Defendant "has retained sophisticated intellectual property counsel." (Id., ¶30). In support of its motion to dismiss, Defendant notes that these allegations could be made against any patent owner and are insufficient to demonstrate purposeful deceit. See Memorandum, p. 10.

In response, Relator alleges that it has alleged the who, what, when and where of its false marking claim. Relator states that it alleges that Hi-Float falsely marked on its website and products after the patent expired but up to and including when this lawsuit was filed. (Response, pp. 8-9). Specifically, Relator claims it satisfies the Rule 9(b) pleading standard by alleging that (1) Hi-Float marked products with an expired patent number; (2) intellectual property is a primary consideration for Hi-Float--a company "based on" the solution, with dominating power in the market; (3) knowing the importance of extending its monopoly, Hi-Float filed and worked with multiple patents; (4) launched new products; but (5) still pretended and represented to the market that alternative coatings that did not include a water soluble carbohydrate would infringe a valid Hi-Float patent. (Response, p. 5 (citations omitted)).

Relator's allegations are insufficient to satisfy the high pleading standards of Rule 9(b). With respect to Relator's first claim, the mere fact that Defendant marked its products with an expired patent number does not demonstrate any intent to deceive. Next, with respect to Relator's second and third claims, Relator merely alleges that Defendant "has experience in the procurement and acquisition of patents" and "has retained sophisticated intellectual property counsel." (Compl., ¶¶29-30). The Federal Circuit has rejected similar claims as insufficient under Fed.R.Civ.P. 9(b). See In re BP Lubricants USA Inc., 637 F.3d at 1312 ("That bare assertion provides no more of a basis to reasonably distinguish a viable complaint than merely asserting the defendant should have known the patent expired. Conclusory allegations such as this are not entitled to an assumption of truth at any stage in litigation."). Similarly, Relator's fourth and fifth claims do not provide any evidence of deceitful intent. These allegations merely provide that Hi-Float incorrectly marked its patents and pretended that coatings that did not include a water soluble carbohydrate would infringe a valid Hi-Float patent. Allegations of mere "pretending," without more, are insufficient to demonstrate purposeful deceit. Accordingly, the Court finds that Relator has not alleged its claims with sufficient particularity under Fed.R.Civ.P. 9(b) and dismisses its false marking claim, without prejudice. Relator has fourteen days from the date of this Order to file an amended complaint.

**III.    Sherman Act**

    A.    Failure to State a Claim

Under the Sherman Antitrust Act, it is unlawful to "monopolize or attempt to monopolize . . . any part of the trade or commerce among the several States," 15 U.S.C. § 2. "'To establish a Section 2 violation, plaintiffs must show that 1) the defendant possessed monopoly power in the relevant market and 2) the defendant willfully acquired or maintained this monopoly power by

anticompetitive conduct. . . .'" Southeast Mo. Hosp. v. C.R. Bard, Inc., 642 F.3d 608, 622 (8th Cir. 2011) (quoting Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1060 (8th Cir. 2000)).

In support of its Sherman Act claims, Relator alleges that "Hi-Float's conduct has caused antitrust injury by means of supra-competitive prices charged for its products by reason of the lack of market competition." (Compl., ¶9). Relator also alleges that it "is threatened with antitrust injury as a result of the breakdown in competitive conditions caused by Hi-Float's anticompetitive conduct and the attendant supra-competitive prices in the market." (Id., ¶12).

Defendant, however, asserts that Relator's Sherman Act claim fails to state a cause of action because Relator does not allege that it is either a competitor or a customer of Defendant. (Memorandum, p. 13). In addition, Defendant claims that Relator has not alleged that it suffered any actual antitrust injury as a result of Defendant's actions. (Id., p. 13). Based upon the latter reason, this Court agrees.

First, Relator's Sherman Act claims are derivative of its false marking claim. See Compl., ¶47 ("**Through the anticompetitive conduct described herein**, Hi-Float has willfully maintained ... that power by anticompetitive conduct")(emphasis added). Because Relator's Sherman Act claims are based upon the same allegations that support the false marking claim, the Court finds that the Sherman Act claims are insufficient. See Defendant Hi-Float, Inc.'s Reply to Plaintiff/Relator's Opposition to Defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 9(b) and Rule 12(b)(6) ("Reply"), ECF No. 11, p. 10).

In addition, as noted by Defendant, Relator's allegation of a mere "threat" of an injury is insufficient. "Unlike a governmental entity, ... a private plaintiff must demonstrate that he has suffered an 'antitrust injury' as a result of the alleged conduct of the defendants, and that he has standing to pursue a claim under the federal antitrust laws." In re Canadian Imp. Antitrust Litig.

Eileen Iverson, 470 F.3d 785, 791 (8th Cir. 2006).  Here, Relator alleges that Defendant created a monopoly by marking its products with an expired patent and/or two mutually exclusive patents, which thereby dissuaded potential competitors from competing with these purported patented products. (Memorandum, p. 14).  Relator's allegation of a "threat" of "antitrust injury" is too vague and conclusory to support a claim under the Sherman Act.  (Id., p. 14; see also Compl., ¶¶48, 52 ("Plaintiff/Relator is threatened with antitrust injury in the form of supra-competitive prices paid for Hi-Float's products as a direct and proximate result of Hi-Float's antitrust violations.")).

Accordingly, the Court dismisses Relator's Sherman Act claims, without prejudice.  Relator has fourteen days from the date of this Order to file an amended complaint.

B.     Statute of Limitations

The Court acknowledges that Defendant also asserts that Relator's Sherman Act claims are also barred by the relevant, four year statute of limitations.  15 U.S.C. §15b provides that "[a]ny action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued."  See also Varner v. Peterson Farms, 371 F.3d 1011, 1019 (8th Cir. 2004).

Defendant asserts that "[a]t best, Plaintiff's pleadings merely suggest that Defendant implemented a policy of applying both marks to its products years ago when both were active, and made no attempts to change or update the policy as a result of pure inertia." (Memorandum, p. 15). Under Defendant's theory, the statute of limitations began to run in 2004, when the '395 patent initially expired and did not restart with every item Defendant sold.  (Id.).

Generally, the statute of limitations period commences on the date the cause of action accrues, i.e., the date on which the wrongdoer commits an act that injures the business of another. Varner, 371 F.3d at 1019 (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338, 28 L. Ed.

2d 77, 91 S. Ct. 795 (1971)).  At least three exceptions, however, permit a party to file a complaint more than four years after the events that give rise to the cause of action under the Sherman Act.  <u>Varner</u>, 371 F.3d at 1019.  The exception relevant to this litigation is a conspiracy or continuing violation theory.[5]  The Eighth Circuit details that exception as follows:

> [I]t permits a cause of action to accrue whenever the wrongdoer commits an overt act in furtherance of an antitrust conspiracy or, in the absence thereof, commits an act that by its very nature is a continuing antitrust violation.... A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded.... When a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants.... However, even when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.... For statute of limitations purposes, . . . the focus is on the timing of the causes of injury, <u>i.e.</u>, the defendant's overt acts, as opposed to the effects of the overt acts.

<u>Varner</u>, 371 F.3d at 1019 (internal citations and quotations omitted); <u>see also</u> <u>Forest Group, Inc. v. Bon Tool Co.</u>, 590 F.3d 1295, 1303 (Fed. Cir. 2009)("These injuries occur each time an article is falsely marked. The more articles that are falsely marked the greater the chance that competitors will see the falsely marked article and be deterred from competing.").

The Court finds that Relator sufficiently alleges a continuing violation.  Relator alleges that each mark was an attempt to monopolize the relevant market further.  <u>See</u> Compl., ¶31 ("By marking and continuing to mark articles with expired patent numbers, Hi-Float specifically intended to unreasonably restrain trade by misrepresenting false barriers to market entry.").  Obviously, and as acknowledged by Relator, it cannot and (does not) seek any past damages barred by the limitations period.  <u>See</u> Response, p. 12.  Therefore, at this stage of the litigation, the Court finds that Relator's Sherman Act claims are not barred by the four year statute of limitations.

---

[5]The second exception is when a cause of action is revived.  <u>Varner</u>, 371 F.3d at 1019.  The third exception, codified at 15 U.S.C. §16(i) is when  the alleged wrongdoer is the subject of a civil or criminal proceeding by the United States.  <u>Id.</u>

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Hi-Float, Inc.'s Motion to Dismiss Pursuant to Rule 9(b) and Rule (b)(6) (ECF No. 6) is **DENIED**, in part, and **GRANTED**, in part. Relator is granted fourteen days from the date of this Order to file an amended complaint.

Dated this   2nd    day of September, 2011.

                                  /s/Jean C. Hamilton
                                  UNITED STATES DISTRICT JUDGE